It's not something that needs reform or repeal. It's fine.  look at anything that actually is dear to me.  It's like we're across the street from our nature, sometimes it's good to hit on someone, sometimes it's just not out to hurt. But I think being more like, out-of-touch-something, out-of-lawful, out-of-touch. The United States Court of Appeals for the Federal Circuit is now open for discussion. Godspeed, the United States House On the Floor. Thank you. Be seated. Good morning, everyone. The first case this morning is number 2012-5034,  Mr. Milstein. Good morning, Your Honor. This is Alan Milstein for Robert Verizon. So let me start with what both the court below and the respondent avoided saying, which is either the vaccines caused this guy's symptoms or they were caused by emotional problems. They were psychosomatic. Whatever the problems were with Dr. Asterix's credentials, he was a board-certified psychiatrist. He ruled out emotional causes. He ruled out psychosomatic causes. So if it's not emotional, then the only explanation under any kind of theory, any kind of differential diagnosis, is that it was caused by the vaccines. What's the law on that? In your brief, you suggest that it was kind of up to the government to necessarily prove up an alternative explanation and that that was their burden that they failed to meet. Is that really what the law requires? I don't think we argue that it was their burden to come up with an alternative explanation. I think what is noticeably lacking in the government's conduct throughout the entire litigation is they have no expert. They have no medical. They didn't do an IME. They have no expert. They don't provide any kind of medical articles. So the only thing we're relying on here is the medical reports of the physicians who saw Mr. Verizon from the moment he got the vaccine until he's still treating today. They weren't vaccine experts. And as this court has noted, treating physicians treat. They don't try to opine as to the scientific mechanism of how these vaccines could cause this kind of injury, which was exactly what the special master and the court below seemed to require of me. They wanted me to explain to them how could the vaccines do what we say it did. I don't know how they did it. And I think this court said in Knudsen that this is a field where bereft of explanations as to how vaccines affect the body. That's the whole point of the three factors that are required for me to prove. And you're also supposed to give the benefit of the doubt to the petitioner who has suffered some injury as a result of this. So if I can, let's focus on the first 30 to 60 days after the vaccines. First of all, prior to that, he is a professor with high level of intelligence, high level of cognitive skills. He's got no significant medical history that would explain what happens after the vaccine. So of course the government and the court below says, well, gee, he had a period of, he saw a psychiatrist for depression. But his brother died of cancer. He went to a psychiatrist twice and that was it. There's nothing in the medical records to suggest that he was anything other than a healthy person before he went and got these two vaccines. So he goes and gets the two vaccines and has an immediate reaction to them. To the extent that the doctor says, I'm going to refer you to a infectious disease specialist and to a neurologist. So he goes to both of these doctors and they both conclude that he had an autoimmune reaction to the vaccines. Now, do they say it was hepatitis B as opposed to hepatitis A? Actually, the neurologist says it was hepatitis A. But how can anyone determine which vaccine it was? The court below tries to continually say, gee, it's only hepatitis B that has the thimerosal and we've got this heavy metal toxicity and we keep talking about common components. There's no evidence of that. That's just not the case. Both vaccines contain aluminum. As one of the doctors said, the aluminum in both vaccines acts synergistically with the thimerosal to create neurological problems. So again, in May 21st, I think it was, he sees the neurologist and the neurologist does an exam and he says, well, one eye is five millimeters, the other is four millimeters. That's evidence of some kind of neurological problem. Now, do I come to this court with X-rays and MRIs showing that there's demyelination? No, there are no X, I mean, the court block kept saying, where's the objective evidence of demyelination? There is, there's no objective test of demyelination. X-rays don't show it, MRIs don't show it, CAT scans don't show it. Anything short of an autopsy, there's not gonna be any objective evidence. Now, so we have this board certified psychiatrist and he says, if I can read from his opinion, on A329, he says, in my opinion, petitioners experienced traumatic injury to the brain caused by subtle injuries to the various parts of the brain through the mechanism of demyelination. Medical history clearly establishes his symptoms occurred after he received the hepatitis A containing aluminum and hepatitis B vaccines containing thimerosal and aluminum. The aluminum in the vaccinations is known to act synergistically with thimerosal causing neurological damage via demyelination. There've been documented cases evidencing the onset of exacerbation. He says, in my- Can I just, I mean, I appreciate you going through the record, but we- That's all for the record. Before your time runs out, I guess I wanna be, get a little clarity on, you know, we're reviewing the legal standard and the legal test that the master used under a de novo standard, but the facts are evaluated based on a deferential standard. What precisely is your argument with respect to the appeal? What are you challenging? Are you challenging the legal standard that was applied, saying it was the incorrect legal standard? Are you challenging the weight of the evidence or how they weighed it? Or what exactly is- Well, essentially the argument is that the, that it was arbitrary and capricious to say that we didn't meet the burden here. So you're not challenging the test they applied, we're not- No, the law is fairly clear in this, the law is fairly clear in this area. You know, there are three factors that got approved, basically general causation, causation in fact, and was there, is there a temporal proximity between the vaccine and the symptoms? There's no question there's a temporal proximity, even though the court below said there wasn't. I don't think there's any, how could there not be? The symptoms start when he gets the vaccines and over a period of years and months, exacerbate to the point where he is completely disabled, no longer a professor, living at home with his mother. Now, what caused that? Is there, did we present a general theory of causation? Yes, the general theory of causation is that these vaccines and everybody, the court below and respondents says, either hepatitis B or both hepatitis A and B in combination, which has always been our theory, that these vaccines can cause heavy metal toxicity and demyelination, neurological damage. Did- Was there enough of a focus in the debate with the physicians and then with the government that the cause was not the virus, so to have the hepatitis A or B, but if, accepting the cause and effect, that it was a heavy metal toxicity? I mean, that was all, that's what all of the doctors that he saw believed. Now, again, you know, this isn't a case with, you know, where we presented paid experts who try to come up with some theory. These are doctors who meet Dr. Verizer, Mr. Verizer, and try to treat him. They're not there to try to figure out the scientific mechanism or whether it was A or B. They wanna know, what is his problem and can he be treated? And so, in the course of that, you know, the court below picked and chose portions of the various medical records to conclude that each medical record taken alone didn't prove what we had to prove under the often facts. That's just, to me, intellectually dishonest. You take all of the medical records together, and what do they say? All of the doctors who were struggling to find out what happened to this guy concluded it was the vaccines. One, conclude there's neurological damage. Two, conclude it's not emotional or psychosomatic. Three, conclude it occurred shortly after he had the vaccines. Four, what evidence is there on the other side that we're wrong? There is no evidence. They presented nothing at all. There's a quote from the opinion, and you'll tell me if this is just a factual error by the special master or what, but he says, in short, many of Mr. Verzer, I don't know. Verizer. Verizer's treating physicians, particularly those who saw him contemporaneously with the initial onset of the symptoms, attributed his condition to causes unrelated to his vaccines, such as HSC virus, or similarly expressed doubt that his symptoms were vaccine-related. That's simply untrue. I mean, first of all, their purpose wasn't to come up with the reason. Now, in their reports, did they say, it could be this, it could be that? Some of them used words like, gee, it's very rare to have this kind of reaction. Well, I mean, that's the purpose of the vaccine court, isn't it? That adverse reactions, even anomalous reactions, that is, one person has a reaction to a vaccine that thousands and thousands of people don't have. So why was the whole vaccine court set up? Because it's public policy in this country to allow all the people who are gonna be helped to encourage them to have the vaccines, knowing, though not knowing why or how, knowing that some people have anomalous, adverse reactions to these vaccines, and therefore deserve to be compensated. But you recognize this is a fact finding by the lower court, and we have to give substantial evidence, deference to it. So you're saying that the record does not contain substantial evidence that many of his treating physicians attributed his condition to causes unrelated to the vaccine? I'm saying that that statement's taken out of context. If you read all the medical records, and you wanna pick and choose all of the comments in the medical records, you can find comments by the physicians. But you do realize on appeal, we don't get to pick and choose. You don't like what they've picked and chose. But unfortunately, we don't get to do that on appeal. We don't get to look de novo at the physician's records and say, well, hmm, I don't think I would interpret it that way. We have to, if there's evidence in the record that supports it, we have to give it to the court. I understand that, but you can also find that it's arbitrary and capricious to make that conclusion when the records don't support that conclusion. I mean, if everybody, if respondent, petitioner, the master, the court below, and each of your honors makes this decision based on the entire medical records of the petitioner, and nothing else, because there's nothing from the respondent, there's no expert report, there's no articles, there's nothing else. All there are is each of the physicians that Mr. Verizon saw over the course of this terrible symptomatic period. And what do those records reflect? I don't see how you can read those records and how the master or the court below could have read those records with nothing from the other side and concluded that it wasn't the vaccines that caused the injury. Well, I think that they would have concluded that you hadn't met your burden of establishing that it wasn't the vaccines that caused the injury. And frankly, I don't understand how I could have lost that case. Now, part of the procedural difficulties in the case was this hepatitis B versus hepatitis A situation. We first filed under hepatitis B when hepatitis A was not on the list. Yeah, I was a little quick. How did that come out in the wash? Because they excluded hepatitis B. I mean, I'm talking about what they did, not what you think whether that was right or not. They said no hepatitis B, but then there was a little give in terms of whether or not it was attributable or related or something. Well, I mean, so we filed under hepatitis B. They didn't want to say, the vaccine court said, you can't talk about A because A is not on the list. You can only talk about B. Talked about B. We submitted the medical records and the expert reports. Nothing happened. Nothing happened. Months and months and months went by. This was a time when lawyers would withdraw cases and then file a district court before the court told them within the last year or so, you can't do that. Vaccine court is it, and the court of federal claims is it. So we withdrew it. And we're in district court, and then hepatitis A comes on the list. And so the district judge says, go back to the vaccine court and litigate the hepatitis A. So now that it's on the list, why didn't that solve the problem on the table? I mean, your guess is as good as mine, Judge Newman. I mean, I think now it's on the list, and now the master says, don't talk about hepatitis B. Don't mention hepatitis B. You can only mention hepatitis A. And then the court below says, there's nothing in the record to suggest that it was hepatitis A and hepatitis A alone that caused these symptoms. Well, that's right, because none of the physicians had either the means or the reason to focus on one vaccine or the other. And in fact, they all thought it was the vaccines together. And the one doctor that we had write supplemental reports, summarizing all the medical records in the past and coming up with a conclusion, said it was a combination of the two vaccines which caused these problems. That's also what respondents said. In their brief, they said either it was A or B or a combination of the two. Let's hear from the government, because we've exhausted your time. We'll save you a minute for rebuttal. Very well, Your Honor. Mr. Johnson. Good morning, Your Honors. May it please the court. This is a case where the special master did exactly what he was required to do. He thoroughly- Is there a balancing of the burdens when they're a prima facie case, when the reaction is immediately after the administration of the vaccine? Is there no burden on the government to come forward with contrary evidence? Your Honor, the burden shifts at the point that the petitioner establishes a prima facie case. You are correct. But in this case, the special master found as a matter of fact that the evidence submitted by petitioner simply didn't establish a prima facie case. Therefore, the government was never under any burden to prove an alternate cause. There was, obviously, a temporal relationship between some symptoms that the petitioner experienced following his vaccinations. But it was petitioner's burden- That's not a prima facie case? No, Your Honor. Under Alton, the prima facie case is for petitioner to establish a medical theory, a logical sequence of cause and effect, and a medically appropriate temporal relationship. That was the analysis that the special master went through with the conclusion of his decision. And he simply found that the evidence in the medical records and in the opinion letters from Dr. Astrick didn't satisfy those three elements that this court has said, and often in later cases, is what constitutes a prima facie case for the petitioner. We didn't say that you only count the evidence on one side. These are questions of fact that depend on the facts in each particular case. And here, physician after physician after physician observed the temporal relationship and could come up with no other possibility other than that it was something, whether it was the virus or the attenuated virus or the mercury or the aluminum. No one knew. There are a couple of points that I want to make in response to that question. First of all, as this court has said, and often in later in Moberly, a temporal association and the elimination of other causes, those two factors alone are insufficient to meet petitioner's burden. There has to be something else. And while many of petitioner's physicians did, in fact, comment on the temporal connection between the onset of the symptoms and the vaccinations, as the special master noted in his decision, that this case presents a case study on why one should carefully evaluate treating physician statements prior to leaping to the conclusion that those statements are probative evidence of causation. The special master did a thorough job, nine pages of single spacing in his decision, analyzing each of the records the petitioner relied upon that he submitted supported his claim. And the special master explained as to each of those notations lie when placed in the broader context of either that physician's records or the medical records as a whole, the statement simply didn't rise to the level of preponderant evidence, which is petitioner's burden in this case. There's no evidence on the other side. It depends on what you're measuring it against. And when you say there's no evidence on the other side, are you referring to the fact that the government never submitted an expert report? Well, if that's what it would have taken, or a physician's opinion as to what else might have caused this immediate temporal response for an adult, no matter of infant's where, maybe it's even more difficult to know what was happening. The special master's statutory duty is to consider the record as a whole, and the statute provides the special master with considerable discretion in determining what constitutes the record. The record in this case consisted of petitioner's medical records, of which there were numerous, and then the opinions that he submitted from Dr. Astrick and Dr. Albom and other experts. The special master, and this court has noted that special masters have a unique position in that they only hear these cases, and so they develop a base of knowledge, and they're supposed to use that knowledge and expertise in evaluating the evidence before them. Do I remember correctly that the first symptoms occurred within hours after the vaccination? The first symptoms, according to the medical records, did occur within hours, but again, a temporal relationship between the onset of symptoms and vaccinations is itself insufficient to establish petitioner's legal burden. They have to meet the often factors of providing a reliable medical theory, establishing a logical sequence of cause and effect, and then establishing a medically appropriate temporal relationship. The special master found, as a matter of fact, that while there was a literal temporal association between the onset of symptoms and the vaccination, that under this court's holding and day was on, it was petitioner's burden to show that the timing between the symptoms and the vaccinations was medically appropriate based on the medical theory that they were proffering. And in this case, the petitioner didn't offer any explanation for why any immediate symptoms that Mr. Reiser might have experienced after his vaccinations was a medically appropriate time frame for either heavy metal toxicity or demyelination, which were the two theories that he was offering. The record is simply silent as to explaining why the timing was medically appropriate for those two theories. Nobody knows. I thought that that was the purpose of the vaccine tables because it couldn't be proved, and therefore it was presumed. Well, actually, Your Honor, the vaccine table does set for specific time frames for symptoms following a vaccination because there is some knowledge for those vaccines and for those injuries about when you would expect, when a medically appropriate time frame would be. In causation and fact cases, you're correct. There is no table time frame. There is no time frame within the presumption. But you're not saying that there's weeks or months. This was hours. So when you say that, I mean, as I recall the table, there's several days for various kinds of reactions. Correct. There are different time frames depending on what the injury is. And those are established based on some medical knowledge of when the injury might be expected to occur following a particular vaccination. In a causation and fact case like this one, where there is no presumed time frame, it's petitioner's burden to offer evidence to show what the medically appropriate time frame would be for the injury and for the vaccination. Can I ask you for some clarification? This is just because I've lost, you know, I can't recall exactly the table versus non-table thing. This is just a background question, which is confusing me a little. Is it not true that there are two kinds of injuries? There are table injuries and there are non-table injuries, and that the all thin and all of this causation and proof arises in connection with the non-table injuries. So here you have Hep A put on the table. So why does all this causation stuff matter if he meets the criteria, if it's already, if it's a table injury? Because there are no table injuries for the Hepatitis A vaccine. That the table has to identify both the vaccine and then a specific injury. And only if the- So just the fact that it was put on the table, I mean, that caused me some confusion here in terms of the big deal was it got placed on the table, but you're saying- It wasn't placed on the table, you couldn't even bring suit under the table. Right, adding it to the table made it a covered vaccine under the vaccine program. That's why initially when he was arguing A and B, B was on the table, A wasn't. He took it out and put it in district court instead because he couldn't allege A and B through the Vaccine Act, is that right? That's correct. At the time he filed his initial petition. But then A gets put on the table. Why can't he now allege the combination of A and B? I mean, it seems like a bit of a catch 22. First of all, any arguments that Mr. Verizon is making regarding the Hepatitis B vaccine have been waived. He filed a motion to amend after he filed the second petition relating to the Hepatitis A vaccine, he filed a motion to amend to add the Hepatitis B vaccine to this case. And the special master denied that motion on the basis of a statutory provision that states that only one petition may be filed with the vaccine and also under the legal doctrine of claim preclusion. The order denying that motion was incorporated into special master Abel's decision denying entitlement, which Mr. Verizon moved for review on, but in moving for review of that decision did not challenge the special master's order denying the motion to amend. So he has not preserved that argument for appeal. Why can't he claim it was a combination of A and B? I mean, I'm sympathetic to the argument that, okay, one of these two vaccines or both of them caused my injury. And I just don't like the idea of asking the petitioner to have to figure out which one of the two concretely or to exclude them from arguing the combination, for example. I understand that that is a sympathetic argument that Mr. Verizon is making, but the facts are that he filed a petition relating to the Hepatitis B vaccine. He chose to withdraw that position under the provision in the Vaccine Act that states that if a special master has not issued a decision within 240 days, the petitioner can withdraw the petition and then file a civil action against the vaccine manufacturer in civil court. Mr. Verizon availed himself of his rights under the statute to do that. The Congress did not envision a situation where a petitioner would withdraw a petition, file a suit against the civil action, and then get to come back to the vaccine program. Did he get a resolution, District Court? He did not. The District Court, from my understanding, has dismissed the Hepatitis A claim so that Mr. Verizon could come back through the vaccine program, but stay the Hepatitis B claim. But see, that's what bothers me, is he's got this combination, it's A and B, that he believes is causing the problem. And he couldn't bring them both, he discovered under the Vaccine Act. So he tried to bring them both in District Court. Then you add A to the table, which eliminates his ability to bring them both in District Court. Mr. Verizon, but Mr. Verizon was the one who made the decision to dismiss, or to withdraw his first petition. If he had simply remained in the vaccine program- But could he have alleged in the first petition that it was A and B that caused it? No. Once the Hepatitis A vaccine was added to the table, sure. He could have been- He had no way of knowing it was going to be added to the table prospectively. Actually, the notice that was issued on December 1, 2004, which we cited in our briefing as a 69 Federal Register 69945-02, makes it clear that as of October 22, 2004, which was nine days before Mr. Verizon withdrew his petition, all of the prerequisites for adding the Hepatitis A vaccine to the vaccine table had been satisfied. That is- So it hadn't been added to the table, but there was a Federal Register site giving whoever- Who do you think reads those things? I mean, you think this poor man is sitting there reading the Federal Register on a daily basis to see if possibly you might add Hep A at some point in the future, or worse yet, like you're alleging, give him an indication that it's been approved and is going to possibly be added. I mean, this doesn't seem like a reasonable thing to suggest that he should have been doing. I can only say that this is information that was publicly available at the time. Was it on the table at the time? No, it wasn't added to the table until December 1, 2004, which was the date that was in public law 108-357, which was enacted on October 22, 2004, saying when the excise tax for the Hepatitis A vaccine was going to be enacted. If I'm of the view that he can fairly argue both the combination of A and B on appeal right now, but I don't believe that argument is waived, how do you respond to that? I mean, does your case hinge on his inability to argue A and B? Absolutely not, Your Honor. We don't believe that the evidence is sufficient to establish that the Hepatitis B vaccine caused the symptoms. And for the same reasons- Well, wait, we are finding by the court of claims for us to, or by the special master in that regard for us to review. No, there is not, because the special master found that Mr. Verizon had waived the right to argue the Hepatitis B vaccine and he simply disregarded that evidence. But in his analysis of the medical records, the physician's statement that he examines and finds are not persuasive and don't rise to the level of preponderance. They themselves don't, most of them don't distinguish between the Hepatitis A and Hepatitis B vaccines. So the same problem with their statements that they aren't based on an independent examination, but rather on Mr. Verizon's own statements, that they're not validated by objective evidence, that they're offered by people who are offering opinions outside of their area of expertise. Those same problems are present whether you're talking about the Hepatitis A vaccine or the Hepatitis B vaccine. So you think that the physician's statements should be disregarded or not given much weight because they're outside the area of expertise? Is that what I understand you to be saying? So what is the area of expertise? What kind of physician, treating physician is it that the government thinks is the best kind to opine on this? Well, it depends on the injury that's being alleged. And in this case, Mr. Verizon is alleging neurological injuries. He's alleging cognitive issues. And so those would be best evaluated by a neurologist. Why not a licensed psychologist who is board certified clinically neuropsychologist? Wouldn't that be neuropsychologist? I mean, that sounds like it's in the right ballpark, doesn't it? Neuropsychologists are qualified to assess cognitive issues, but most of the time don't hold a medical degree. And when you're talking about identifying causation, when you're talking about establishing medical theories that show why neurologically a vaccine can cause a particular injury, a neuropsychologist is not always going to be qualified to do that if they don't have a medical degree. Okay, thank you, Mr. Johnson. And I didn't read that. I'm sorry. Two minutes. I didn't read that public law. And Mr. Verizon, surely I know that understanding your- Did you observe the argument for appeal? Yes, I did. Because? Say that again? How so? Because? How did you preserve it? The rebuttal? Yeah. With the clerk's office? They said 13 and two. I don't understand your argument. Judge Post is asking if you preserved the argument for appeal, meaning did you raise it below and properly object and or appeal at the timeframe that you needed to? Yes, we did. You're talking about the course, the master's decision and then the course decision below? I'm talking about the hepatitis B question and the combination and not allowing hepatitis B, not the whole case. Oh, you're talking about whether we preserved amending the failure to allow cement. I'm sorry, yeah. We did not appeal interlocutory the denial of the right to amend. But, and the reason we didn't is because we didn't have a physician who was going to say it was B as opposed to A. They all said the vaccinations, the vaccines, A and B in combination. And the law in this area doesn't say you've got to prove it's only the vaccine that causes. It says it's got to be a substantial factor. So just like if the vaccine and something else out there causes the injury, you're covered. If the vaccine A and vaccine B, which is out there causes the injury, then you're covered. But the evidence, you would agree with your friend on the other side, right? The evidence with respect to A, B, or a combination of A or B is the same. I mean, there's no reason for us to suggest based on the analysis by the medical examiner, by the specialist here, that the conclusion would have been different if he had allowed consideration of A plus B as opposed to just A, right? I don't agree with that. I mean, the master, I mean, I had difficulty with the master. From the very beginning, it was, when counsel says, gee, they have this special expertise. I mean, I don't try, I'm not a vaccine lawyer. I don't wanna talk about the whole case. I wanna talk about the question of whether or not there would have been a difference if he had allowed consideration with respect to what your expert said. Is there a difference between considering A exclusively or considering a combination of A and B? I think if the master had said, I'm gonna consider the opinions of the physicians with respect to B in making my decision, I think he would have, I don't see how he could not have made the decision that it was a combination of A and B, which caused the injuries. But he says in his opinion, I'm not gonna consider anything with respect to B. I'm not gonna consider any comment by any physician with respect to B. Why? Why? If it's A and B, then you have to consider B. B is in that universe of stuff outside of hepatitis A vaccine. If anything, if A is a substantial factor in connection with anything else, then we're covered. Yeah, but you are acknowledging, I guess, in response to his first question, that you need A to be a substantial factor in conjunction with B, right? That you can't prevail if we were of a mind that B caused his symptoms because you didn't preserve your right to appeal the denial of inclusion of B alone. If we concluded it was B and B alone, I mean, I'm no medical expert, but if I were to reach that conclusion, you acknowledge that's off the table. It wasn't preserved for appeal. Well. I'm asking that as a question. Yeah, I understand you are. When we had the argument the first time, before the remake. It really only needs a yes or a no. I was under the assumption that B, that if any court could say it was B alone, that the courts would say, you know what, because of that catch-22, they should be covered for this. But I don't see how anybody can say it's B alone. Well, lots of your doctors did. I don't think they did. Actually, yes, they did. Dr. Nams. Meryl Nams. Kaiser's multi-symptom illness is due to hepatitis B vaccine. Never mention say. Dr. Lifrak says, it appears he suffered heavy metal toxicity poisoning. Now, this doctor, who is not an MD, went on to say heavy metal toxicity poisoning could be caused by A and B because they contain mercury. Well, guess what? Only B contains mercury, not A, and everyone in the record agrees with that. So, her diagnosis is heavy metal toxicity poisoning, which might explain all the symptoms, but she can't attribute that to A like she does because nobody argues that A contains mercury. It doesn't. But it contains aluminum. She didn't say that. She said it because of the mercury. The only person in the entire record that mentioned aluminum was Dr. Astrick, and he mentioned that in a past-time comment. He's the only person in this whole record that ever mentions the word aluminum. Medical provider of the 23. As you can see, I read them all. I know. But it does contain aluminum. Dr. Nass was an expert, not a treating physician. She was an expert that we used in the hepatitis B situation. And so, in her opinion, she only said hepatitis B because that's the only thing we could argue at that point. So, she was formulating her opinion based on what you could argue? I mean, that's not a good thing, right? Shouldn't a doctor be objectively evaluating all the possible causes and effects, not just basing an opinion on what you could argue based on what was on the table at the time? The question was, was hepatitis B a significant factor in causing the injury? The answer was yes. Because the combination of A and B, and she didn't say this, but the combination of A and B caused the injury. So, if she says B was a significant factor and A was a significant factor, they were both significant factors. But nobody can discern which it was. Okay, we must move on. We've had a five-minute break. Thank you. I think we have the argument. Thank you, Mr. Bilstein. Appreciate it.